IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH SWIDER<br><br>PLAINTIFF<br><br>v.<br><br>UNITED ASSOCIATION LOCAL UNION No. 322 HEALTH & WELFARE FUND,<br><br>THE BOARD OF TRUSTEES OF THE UNITED ASSOCIATION LOCAL UNION No. 322 HEALTH & WELFARE FUND,<br><br>JAMES KEHOE,<br><br>ARTHUR SCHENKER,<br><br>DAVD BRUCE,<br><br>DANIEL FALASCA, JR.,<br><br>JAMES LEE,<br><br>JOHN A. PRICE,<br><br>and<br><br>JOHN CONNORS<br><br>DEFENDANTS | Civil Action No. _____ |

PLAINTIFF'S COMPLAINT

Plaintiff, Joseph Swider herein files this civil action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq., as amended ("ERISA"), to address and rectify an erroneous, arbitrary and capricious benefit claim decision, breaches of fiduciary duty, and discrimination, and in support thereof avers as follows:

1

## SYNOPSIS OF CASE

1. Plaintiff, Joseph Swider suffers from ALS or Lou Gehrig's Disease, which disease has caused him to become paralyzed (quadriplegic), bedridden, and respiratory and ventilator dependent, all of which has required daily Private Duty Nursing services since 2012 and sixteen (16) hours per day of these services since May 2, 2012. For over three (3) years, since March 2012, the Local 322 Health & Welfare Fund ("Plan") has provided and paid for the Private Duty Nursing care benefits. As outlined below, the Plan and its Board of Trustees incorrectly terminated Mr. Swider's Private Duty Nursing care benefit, which termination is to take effect October 31, 2015, as it improperly and erroneously interpreted the terms and provisions of the existing health benefit plan. *Because his life depends upon this benefit, Mr. Swider herein pursues a legal action (and shall seek an emergency injunction and hearing) to continue, reinstate, and maintain this benefit and its coverage.*

## PARTIES

2. Plaintiff, Joseph Swider ("Mr. Swider") is an adult individual who is a citizen of the State of New Jersey and who resides at 2312 Atco Avenue, Atco, New Jersey 08004.

3. At all times material hereto, as a retired union worker (26 years of service) Mr. Swider was and still remains a Retired Covered Person participant in United Association Local Union No. 322 Health & Welfare Fund. i.e. the Plan.

4. Defendant, United Association Local Union No. 322 Health & Welfare Fund ("Plan"), is a welfare plan designed to provide hospital, surgical, prescription, death, and accidental death and dismemberment benefits to its covered participants and their dependents and includes a group health plan, Plan No. 501, which has a registered address at 534 South Route 73, Winslow, New Jersey 08095. Attached hereto as Exhibit "A" is a true and correct copy of the April 1, 2013 Summary Plan Description for the United Association Local Union

2

No. 322 Health & Welfare Fund; *see* Section 20, Page 3 which defines the "Plan" as United Association Local Union No. 322 Health & Welfare Fund ("SPD"). Attached hereto as Exhibit "B" is a true and correct copy of the Horizon Blue Cross Blue Shield of New Jersey Comprehensive Health Plan dated 01/14/2011 for the UA Local 322 Welfare Fund ("Horizon Policy")(collectively "Health Plan").

5. The Plan, which is fully insured for medical benefits (pertinent to Mr. Swider's claim and legal action), maintains its assets (derived from employer contributions) "in a trust in a Trust Fund established for that purpose by agreement between the South Jersey Mechanical Contractors Association and the United Association Local Union No. 322" and is subject to and governed by ERISA.

6. Defendant, the Board of Trustees of the United Association, Local Union 322 Health & Welfare Fund (used interchangeably as "Board of Trustees" and "Trustees") is the board of persons appointed to serve as Trustees to operate, monitor, oversee, and govern the Plan and which entity and persons, collectively and individually, are ERISA fiduciaries for and over the Plan.

7. The SPD defines and, thus, identifies both the Plan Administrator and the Plan Sponsor as "The Board of Trustees." Exhibit A at Section 20, Page 3.

8. Upon information and belief, at all times pertinent hereto, the individual Trustees of the Plan included James Kehoe, Arthur Schenker, David Bruce, Daniel Falasca, Jr., James Lees, John A. Price, and John Connors (Alternate). *See* Exhibit A at Section 23.

9. Defendant, James Kehoe, is an adult individual who at all times pertinent hereto, was a duly appointed Trustee of the Plan, is an ERISA fiduciary, with an address at 534 South Route 73 Winslow, New Jersey 08095.

10. Defendant, Arthur Schenker, is an adult individual who at all times pertinent hereto, was a duly appointed Trustee of the Plan, is an ERISA fiduciary, with an address at 534 South Route 73 Winslow, New Jersey 08095.

11. Defendant, David Bruce, is an adult individual who at all times pertinent hereto, was a duly appointed Trustee of the Plan, is an ERISA fiduciary, with an address at 534 South Route 73 Winslow, New Jersey 08095.

12. Defendant, Daniel Falasca, Jr., is an adult individual who at all times pertinent hereto, was a duly appointed Trustee of the Plan, is an ERISA fiduciary, with an address at 1 Greentree Center, Suite 201, Marlton, New Jersey 08053.

13. Defendant, James Lees, is an adult individual who at all times pertinent hereto, was a duly appointed Trustee of the Plan, is an ERISA fiduciary, with an address at 1 Greentree Center, Suite 201, Marlton, New Jersey 08053.

14. Defendant, John A. Price, is an adult individual who at all times pertinent hereto, was a duly appointed Trustee of the Plan, is an ERISA fiduciary, with an address at 1 Greentree Center, Suite 201, Marlton, New Jersey 08053.

15. Defendant, John Connors, is an adult individual who at all times pertinent hereto, was a duly appointed *Alternate* Trustee of the Plan, is an ERISA fiduciary, with an address at 1 Greentree Center, Suite 201, Marlton, New Jersey 08053.

## JURISDICTION AND VENUE

16. Inasmuch as this action presents claims arising under ERISA, this Court has federal question jurisdiction under and pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132(e) (ERISA) and, further, in accordance with the Doctrine of Complete Preemption.

17. Venue is proper in this Court under and pursuant to 28 U.S.C. § 1391(c) inasmuch as plaintiffs and defendants are either citizens of, located in, and/or conduct business in the State of New Jersey. Indeed, the Plan's registered address at 534 South Route 73 Winslow, New Jersey 08095 is within the boundaries of this Court.

## TRUSTEES' FIDUCIARY DUTIES UNDER ERISA

18. At all times pertinent hereto, the Board of Trustees and the individual Trustees were and remain ERISA fiduciaries over the Plan, both as a result of their status as named Trustees of the Plan and based upon their responsibilities and duties in operating, overseeing, monitoring, controlling, and governing the Plan.

19. At all times pertinent hereto, the Board of Trustees, collectively and individually, owed fiduciary duties to the Plan participants to operate, oversee, monitor, control, and govern the Plan prudently, in the sole and exclusive interest of the participants, including Mr. Swider, and in a non-discriminatory manner. Exhibit A at Section 22, Page 1; see also, 29 U.S.C. §1104(a)(1).

20. The Plan through its SPD provides that the "Board of Trustees, subject to the requirements of law, shall be the sole judge of the standard of proof required in any case and the application and interpretation of the Plan, and the decision(s) of the Board of Trustees are final and binding." Exhibit A at Section 21, Page 2.

21. The Plan through its SPD also states that: "(T)hese benefits are not vested and the Trustees may, (sic) change, alter, modify, or discontinue the benefits described herein at any time;" and "The Trustees have the authority to interpret the plan of benefits and any facts related to a claim for benefits and the interpretation of the Trustees shall be conclusive on the participant and anyone claiming by, for or on behalf of the participant." Exhibit A at Section 21, Page 2.

## ERISA CLAIM PROCEDURES

22. The SPD document provided to retired Covered Persons, the Summary Plan Description attached as Exhibit A, states that: "The procedures to claim benefits and appeal a denial of benefits through your Horizon policy are described in the Horizon booklet which is available upon a request from the Fund Office. The claim procedures at the end of the book do not apply to Horizon benefits except as expressly noted." Exhibit A at Section 2, Page 6.

23. The SPD document provided to retired Covered Persons, the Summary Plan Description attached as Exhibit A, states that: "If your claim for a welfare benefit is denied, in whole or part, you are entitled to receive a written explanation of the reason for the denial .... Also, you have the right to appeal any denial, all within specific time schedules." Exhibit A at Section 22, Page 2.

24. The Horizon Policy sets forth a three level Appeals Process, including if needed, an external appeal with an independent utilization review organization. Exhibit B at pp. 114-117.

25. The Horizon Policy sets forth its Claims Procedures, which includes a detailed denial notice containing ten (10) requirements such as the reason for the claim denial, specific reference to the main provision upon which the denial is based, a specific description of other material or information needed to complete the claim, the specific internal rule or guideline utilized or relied upon, inter alia. Exhibit B at pp. 110-113.

26. In accordance with ERISA (law), the Plan, whether the benefit claim is handled by Horizon or the Trustees, requires at a minimum a *two-step* process beginning with a written explanation of the reason for the denial, inter alia., and then, a "right to appeal any denial, all within specific schedules." *Compare*, 29 C.F.R. §2650.503.1 setting minimum claim

requirements ["Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures). The claims procedures for a plan will be deemed to be reasonable only if—"] to Exhibit A at Section 22, Page 2.

27. 29 C.F.R. §2650.503.1 (b)(3) requires that: "(T)he claims procedures do not contain any provision, and are not administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits."

28. 29 C.F.R. §2650.503.1(b)(5) requires that: "(T)he claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."

## PERTINENT TERMS OF THE ERISA PLAN

29. Upon information and belief, up and through August 31, 2015, the medical benefits under the Health Plan, including as to Retired Covered Persons such as Mr. Swider, were provided under a contract of group insurance, known as a Comprehensive Major Medical insurance contract purchased and provided by Horizon Blue Cross Blue Shield of New Jersey ("Horizon") to supplement the benefits provided by Medicare. Exhibit A at Section 2 and Exhibit B.

30. The Health Plan identifies and provides a Private Duty Nursing benefit at Section B as an "B. Eligible Supplemental Services and Supplies" in the Policy. Exhibit B at p. 25, 60, and 63.

31. The "Private Duty Nursing Care" benefit coverage is described in the Policy at Section B as follows:

> This program cover charges by a Nurse for Private Duty Nursing care by a Nurse when ordered by a physician.
>
> Services are available to a Covered Person in the Covered Person's home if the services provided require the skills of a Nurse. No benefit will be provided for the services of a Nurse who ordinarily resides in the Covered Person's home or is a member of the Covered Person immediately family.

Exhibit B at p. 63.

32. The SPD at Section 2, Pages 3 and 5, respectively, entitled Medical Benefits coverage identifies "Private Duty Nursing" as "Other Services" and states the benefit as follows: "Unlimited maximum per benefit period;" (p. 3) and then, as to Medicare Eligible Covered Persons, "Unlimited." (p. 5). Exhibit A at Section 2, pp. 3 and 5.

33. Both the Policy and SPD provide for a Home Health Agency Care benefit, which benefit is separate and distinct from the Private Duty Nursing benefit. *Compare* Section "A. Eligible Basic Services and Supplies" includes Home Health Agency Care at Exhibit A at pp. 21 and 23 to "Section B. Eligible Supplemental Services and Supplies" includes Private Duty Nursing at Exhibit A p. 25.

34. The Policy identifies Home Health Agency Services as and under its "A. Eligible Basic Services and Supplies." Exhibit B at p. 21.

35. The Home Health Agency Services provision of the Policy does not identify, adopt, or otherwise incorporate any aspect of the Private Duty Nursing Care benefits. Exhibit A at pp. 50-51.

36. Contrary to the Private Duty Nursing Care benefit (Exhibit A at p. 23), the Home Health Agency Care benefit contains a four (4) hour visit limit ("can last up to 4 hours"). Exhibit B at p. 51.

37. Further, the Home Health Agency benefit is defined under the Policy to provide a service to "eliminate Hospital stays." Exhibit B at p. 13.

38. The SPD lists Home Health Care under its "Hospital/Facility Services" section (Section 2) and notes coverage, respectively, as In-Network 80% and Out of Network 60% after deductible with up to 120 visits (p. 2); and then, for Medicare Eligible Covered Persons, as "100% Direct Admission." (p. 4). Exhibit A at Section 2, pp. 2 and 4.

39. Both the Policy and the SPD, that is the Health Plan, identify and provide two distinct, separate benefits in both Home Health Agency Care and Private Duty Nursing.

## POST AUGUST 1, 2015 HEALTH PLANS

40. After August 1, 2015, the Plan allegedly changed its medical benefits provider from Horizon to AmeriHealth of NJ and for Medicare participants to LaborFirst ("New Plans"), though the benefits did not change:

- Both AmeriHealth of NJ and LaborFirst will administer our present day benefits plans without changes. So the UA Local 322 Health and Welfare plans will remain unchanged.

Attached hereto as Exhibit "C" is a true and correct copy of the Plan's June 2015 Letter to Participants. (Emphasis supplied).

41. Inasmuch as the Plan's claim review and decision at issue does not cite, discuss, or otherwise address the New Plans and, further, the New Plans have not yet been produced despite the Swider's request on three occasions. Attached hereto as Exhibits "D," "E," and "F"

9

are true and correct copies of the Swider's requests through counsel for the production of Plan documents, including the LaborFirst benefit plan, inter alia. (Emphasis supplied).

## BACKGROUND FACTS

42. Since January 6, 2012, Mr. Swider has suffered from ALS, or Lou Gehrig's disease, which has caused him to become quadriplegic, ventilator dependent, respiratory dependent, essentially bedridden, inter alia., though he remains able to think, speak, and live.

43. In order to address his permanent, incurable medical issues and *stay alive*, Mr. Swider has had the benefit of Private Duty Nursing Services under the Plan since March 2012 and sixteen (16) hour per day since around April 2012.

44. Mr. Swider is completely dependent and requires constant, continuous care to address his medical issues, especially to monitor and clean his trachea tube as he lies in bed for most, if not all day and night.

45. Horizon has provided and paid for "Private Duty Nursing" coverage for Mr. Swider since March 2012.

46. Horizon has paid Bayada to provide "Private Duty Nursing" services for Mr. Swider since March 2012.

47. Mr. Swider has never received any Home Health Agency or Home Health Agency Care services under the Health Plan.

48. After receiving the Plan's June 2015 Letter to participants (Exhibit "C"), which stated that, "(I)f you have any questions please feel free to contact the Fund office," Donna Swider on behalf of her husband and Plaintiff, Joseph, called the Plan's offices and in order to confirm that the Health Plan benefits, in particular, Mr. Swider's Private Duty Nursing benefit and coverage would *not* change; and in both calls, the Plan (or Fund office) through its

authorized representative advised Mrs. Swider that there was no change in the Plan or her husband's benefits and coverage.

49. Then, on or about July 16, 2015, the Plan conducted an open meeting for its Covered Persons (members) to discuss the Health Plan and the administrative changes denoted in its June 2015 Letter to participants.

50. Based upon the discussions at that open meeting, Mrs. Swider, with her husband present, decided to speak up in order to and confirm, consistent with the Plan's June 2015 Letter to participants and her calls to the Plan, that her husband's Private Duty Nursing care benefit and coverage would continue; however, for the first time, a LaborFirst representative stated that there was no coverage for Mr. Swider's Private Duty Nursing care benefit.

51. Prior to the open meeting, neither the Plan, nor the Trustees, nor LaborFirst, nor anyone else in any way, either in writing or verbally, advised the Plan participants, including Mr. Swider, that the any benefit or service had changed, had been modified, had been eliminated, or had otherwise been affected.

52. Prior to the open meeting, neither the Plan, nor the Trustees, nor LaborFirst, nor anyone else in any way, either in writing or verbally, advised Mr. Swider or his wife that the Private Duty Nursing care benefit that he had been receiving for years was changed, modified, eliminated, or had other been affected.

53. Neither the Plan, nor it Trustees, sent any written communication to Mr. Swider that his Private Duty Nursing care benefit was changes, lessened, terminated, or had otherwise been affected.

54. Then, instead of identifying and pursuing an appeal process as required under ERISA and the Plan (either via Horizon or the Trustees), by letter dated July 30, 2015, the Board

of Trustees through Kurt R. Krueger, Jr. simply advised the Swiders that the "sixteen 16 hours of home health nursing per day" would continue "until September 1, 2015, while the matter is investigated." Attached hereto as Exhibit "G" is a true and correct copy of the Plan's July 30, 2015 letter to Donna Swider. Ms. Swider submitted a letter from Horizon, but it was not an "appeal" and, moreover, the July 30, 2015 letter did not deny the claim or set forth an appeal period.

55.   By letter dated August 31, 2105, the Trustees through Kurt R. Krueger, Jr., stating that, based upon "an appeal as presented by your wife" regarding "continued coverage of Private Duty Nursing at sixteen (16) hours per day and a special meeting of the Board of Trustees on August 20, 2015, that the appeal was denied solely based upon the following finding:

> We note that you previously appealed directly to Horizon regarding this coverage. On March 26, 2012, Horizon's Expedited Member Appeal Committee granted you a tapered decrease in Private Duty Nursing ("PDN") with a final step "as of 4/03/12 PDN will decrease to 16 Hours per day with a LCD (Last Covered Day) of 05/02/12." Private Duty Nursing is part of the Home Health Agency services in the Horizon Plan and has limits on the length of coverage, as does Medicare. A nurse visit is not to exceed four (4) hours per day except when longer service is needed on a short term basis. The services provided from 2012 to date satisfy any allowable short term coverage.
>
> … However, Private Duty Nursing is not covered under the terms of the Welfare Fund's retiree health coverage…

Attached hereto as Exhibit "H" is a true and correct copy of the Plan's August 31, 2015 "appeal" denial letter.

56.   The Plan's August 31, 2015 "appeal" denial letter did extend the Private Duty Nursing coverage another sixty (60) days, or until October 31, 2015, but advised that there were no further or voluntary appeals available and the participant "may file suit in federal court under section 502 (a) of ERISA, 29 U.S.C. §1132(a) …" *Id.*